UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRIAN CLARK,

                Plaintiff,

      -against-                                      1:12-CV-01508 (LEK/RFT)

CUMBERLAND FARMS, INC.,

                Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

In this premises liability case, Plaintiff Brian Clark ("Plaintiff") alleges that he sustained serious and permanent injuries when he slipped and fell on "black ice" outside of Defendant Cumberland Farms, Inc.'s ("Defendant") store. Dkt. No 1-1 ("Complaint"). Presently before the Court is Defendant's Motion for summary judgment. Dkt. No. 19 ("Motion"). For the following reasons, the Motion is denied.

**II.    BACKGROUND**

    **A. Facts**

        *1. The Incident*

Defendant owns and operates a convenience store in Schenectady, NY. See Dkt. No. 19-9 ("Statement of Material Facts") ¶ 2. In front of the store, there is a raised sidewalk that extends across the entire building. See Dkt. No. 19-3 ("Leduc Deposition") at 8. On the right corner of the sidewalk (facing the entrance), there is a handicap ramp "constructed of blacktop" that rises "from the parking lot surface up to the level of the sidewalk." Dkt. No. 21-1 ("Response Statement of Material Facts") ¶ 3. There is also an overhang from the roof that extends over the sidewalk

"approximately three and a half to four feet." Id.

On December 13, 2009, at approximately 7:30 P.M., Plaintiff and his girlfriend walked onto Defendant's property. Dkt. No. 21 ("Plaintiff's Memorandum") at 2. Either Plaintiff or his girlfriend entered the store to purchase a few grocery items, while the other waited outside near the entrance. Id. When either Plaintiff or his girlfriend returned, Plaintiff "took three or four steps along the sidewalk and then stepped from the sidewalk onto the handicap ramp. As he did so, his foot went up into the air and he fell onto the ground." Id.

Plaintiff contacted Defendant the following day to notify them about his fall. Resp. SMF ¶ 12. Defendant's employee filled out an incident report, stating that "[d]uring the ice storm on sunday dec 13 2009 [c]ustomer states the next day that he slipped on ice in the parking lot around the corner of the building." Dkt. No. 19-7 ("Incident Report") at 1. Under the section titled "Have you taken appropriate measures to prevent this type of accident from happening again?" the Incident Report states "[s]alted area next day." Id. at 2. It also indicates that Rhiannon Kaarstad ("Kaarstad") and Jahnelle Roberts ("Roberts") were the only two employees working at the time of Plaintiff's fall. Id.

In Plaintiff's deposition testimony, he states that before he fell, he did not observe any areas of ice or snow on the handicap ramp, but "assumed it was wet with water." Resp. SMF ¶¶ 5-6. After the fall, Plaintiff observed "black ice"[1] on the handicap ramp where he slipped and fell. Id. at 6-7. Plaintiff did not touch the ice with his bare hand but only through his gloves. Id. at 9. Plaintiff states that he "does not know whether the wetness or black ice covered the entire ramp," and that

---

[1] Plaintiff describes "black ice" as "where it looks like it's not ice, it looks like it's just wet, but it actually is slippery." Pl. Mem. at 8.

2

the "the wetness or black ice he saw did not have any appreciable thickness." Id. at 10.

### 2. Weather Analysis

Plaintiff hired a forensic meteorologist, Howard Altschule ("Altschule"), to investigate the weather conditions in the vicinity of Defendant's store on the day of Plaintiff's fall. Resp. SMF ¶ 23. Altschule testified that a "light snow" fell from approximately 12:30 p.m. until 2:30 p.m., and that the "snow mixed with or changed to sleet and/or rain" during that time period. Id. ¶ 32. The precipitation then changed to "a light rain or drizzle" from approximately 2:30 P.M. until 6:45 P.M. Id. ¶ 33. At 7:30 P.M., the approximate time of Plaintiff's fall, there was no appreciable precipitation. Id. ¶ 34.

Altschule testified that, at the time of Plaintiff's fall, the air temperature was approximately 35 to 36 degrees Fahrenheit, and that "black ice can form at temperatures above thirty-two degrees if the ground temperature is below thirty-two degrees." Resp. SMF ¶¶ 31, 34. However, Altschule's analysis only examined the air temperature, not the ground temperature, on the date at issue. Id. ¶ 37.

Altschule testified that the last significant snow accumulation before Plaintiff's fall occurred on December 9, 2009. Pl. Mem. at 13. Altschule also concluded that, due to changes in air temperature, melting and "refreezing processes . . . occurred on December 8th, 10th, [and] 11th," and "new ice formed between 1:45 and 3:45 p.m. on December 12[th]."[2] Resp. SMF ¶¶ 26-27.

---

[2] Defendant attacks Altschule's analysis on the grounds that, *inter alia*: (1) the report is based on the "vicinity" of Defendant's store and not specifically on the handicap ramp; and (2) the analysis is based on an "unexposed, untreated, and undisturbed" area, which the handicap ramp is not. See Mot. at 9-10. Plaintiff concedes both of these facts. Resp. SMF ¶¶ 24-25. However, as will be discussed *infra*, Altschule's analysis is nonetheless relevant, circumstantial evidence to the issue of Defendant's notice of the dangerous condition.

### 3. Defendant's Snow Removal Procedures

Carl Leduc ("Leduc"), Defendant's store manager, testified that an outside vendor handled snow removal of the parking lot and sidewalk, but only when a minimum of three inches of snow accumulated. Leduc Dep. at 10; Resp. SMF ¶¶ 17-18. Otherwise, it was Defendant's employees' responsibility to manage ice and snow removal. Resp. SMF ¶ 20. Defendant did not have an official snow removal protocol; according to Leduc, employees "were just watching all the time. If you're by the window, you're looking out the window, you think it needs it[, then] you go out and do it." Id. ¶ 21. Leduc was not sure if he or his employees shoveled or salted the sidewalk or handicap ramp on the day of Plaintiff's fall, because the store does not keep records of snow removal. Leduc Dep. at 40-41. Leduc was not working at the time of Plaintiff's fall. Id. at 36.

### 4. Potential Alternative Causes of Black Ice

Kaarstad states that, as part of Defendant's employees' daily duties, they would mop the store's floor throughout the day. Resp. FSF ¶ 5.[3] The employees were then instructed to empty the waste water on the sidewalk or pavement on or around the area of the handicap ramp. Id. The mop bucket would be emptied either at the end of one's shift or before the store closed at midnight. Dkt. No. 21-4 ("Kaarstad Affidavit") ¶ 2. On some days, more than one bucket of mop water would be emptied outside. Kaarstad Aff. ¶ 2. Roberts also states that "it was common practice to dump the mop water near the front corner of the store on the [right] side." Resp. FSF ¶ 7. Further, "she observed that the dirty water would freeze." Id.

---

[3] Plaintiff has included a Further Statement of Facts ("FSF") within the Response SMF. Because Plaintiff uses duplicative paragraph numbers in the combined documents, the Court will refer to them by their respective headings for clarification purposes.

Additionally, Kaarstad states that "at the right angle juncture of the roof overhang on the [right] side of the building there was an obvious opening in the roof material from which water would drip and birds would enter and exit." Resp. SMF ¶ 4. She states that she "frequently observed water dripping from the hole in the roof overhang and then accumulate on the ramp where ice would form." Id. ¶ 6. She states that "when [she] would see . . . ice [she] would apply salt since [she] knew [it] was a handicap ramp area." Kaarstad Aff. ¶ 5.

### 5. *Prior Complaints*

Plaintiff, who had frequented Defendant's store regularly for six years prior to his fall, was unsure whether he had ever complained to Defendant about icy conditions on the handicap ramp. Resp. SMF ¶ 14; Pl. Dep. at 30. Leduc states that he had not "receive[d] any complaints about water, snow, ice or other liquid on the ramp, sidewalk or walkway in front of or adjacent to the store" and had "not receive[d] any complaints regarding the manner in which snow or ice removal was conducted" prior to Plaintiff's fall. Resp. SMF ¶ 22. However, Kaarstad, who worked for Defendant from August 2009 through July 2011, states that "she received complaints from customers that ice had formed on the handicap ramp." Id. Kaarstad states specifically that "there were complaints made directly to me by customers that ice had formed in the ramp area because of water that had been poured onto it." Kaarstad Aff. ¶ 3.

## B. Procedural History

Plaintiff originally filed the Complaint in the Supreme Court of New York, Schenectady County, on August 10, 2012. Compl. Defendant then removed the action based on diversity jurisdiction. Dkt. No 1 ("Removal"). Defendant answered, discovery was conducted, and Defendant filed the Motion and an accompanying Memorandum of law in December 2012. See

Dkt. Nos. 2 ("Answer"); 7-16; 19-8 ("Defendant's Memorandum"); Mot. Plaintiff responded and Defendant replied. See Dkt. Nos. 21 through 21-5 ("Response"); 23-24 ("Reply").

## III. LEGAL STANDARD

### A. Summary Judgment Legal Standard

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). "The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the 'threshold inquiry of whether there is the need for a trial.'" Feder v. Target Stores, No. 11-CV-3675, 2014 WL 1651955, at *2 (E.D.N.Y. Apr. 24, 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

**B. Negligence: "Slip and Fall" Liability**

"To prevail on a negligence claim under New York law, a plaintiff must show that '(1) defendant owed her a duty of care, (2) defendant breached that duty, and (3) plaintiff was injured as a result of that breach.'" Henderson v. Sommer, No. 08 Civ. 3440, 2011 WL 1346818, at *6 (S.D.N.Y. Apr. 1, 2011) (quoting Tuthill v. U.S., 270 F. Supp. 2d 395, 398 (S.D.N.Y. 2003)). Specifically, in "slip-and-fall cases involving snow and ice," a property owner is liable where she (1) created the defect, or (2) had actual or constructive notice of its existence." Richards v. Pathmark Stores, Inc., No. 07-CIV-1790, 2008 WL 3165582, at *4 (S.D.N.Y. Aug. 6, 2008) (quoting Voss v. D & C Parking, 749 N.Y.S.2d 76 (App. Div. 2002)). "Though a plaintiff cannot avoid summary judgment on this issue through mere speculation and conjecture, circumstantial evidence may be sufficient if it supports an inference of causation or negligence." Feder, 2014 WL 1651955, at *3 (citing Krichevskaya v. City of New York, 817 N.Y.S.2d 103 (App. Div. 2006)); Olsen v. KMart Corp., No. 04–CV–3648, 2005 WL 2989546, at *11–12 (E.D.N.Y. Nov. 8, 2005).

7

## IV. DISCUSSION

### A. Whether Defendant Created the Dangerous Condition

"To demonstrate entitlement to summary judgment, a defendant must first 'establish as a matter of law that it maintained its premises in a reasonably safe condition [and] that it did not create the allegedly dangerous condition.'" Reinemann v. Stewart's Ice Cream Co. Inc., 656 N.Y.S.2d 546 (App. Div. 1997). Further, "[a]n injured plaintiff's allegation that a defendant property owner created the condition . . . must be more than mere speculation, and must be supported by evidence." See Carricato v. Jefferson Valley Mall Ltd. P'ship, 749 N.Y.S.2d. 575 (App. Div. 2002); see also Tsivitis v. Sivan Assoc., LLC, 741 N.Y.S.2d. 545 (App. Div. 2002). "Conversely, when a plaintiff does provide evidence to support his claim that a defendant created the hazardous condition . . . courts regularly deny summary judgment and allow the case to proceed to trial." Richards, 2008 WL 3165582, at *4 (listing cases).

In the area of snow and ice removal, a defendant can show that it maintained its premises in a reasonable manner through evidence such as policies and procedures or records of maintenance performed on the day at issue. See Gonzalez v. Am. Oil Co., 836 N.Y.S.2d. 611, 612, 614 (App. Div. 2007) (finding defendant did not create hazardous condition where it performed snow and ice removal on an "as-needed basis" and kept documents of maintenance performed). Here, while Defendant performed snow and ice removal on an "as needed" basis, it has provided no proof of maintenance performed on the day of Plaintiff's injury, despite evidence that there was at least some snow and ice precipitation during the day. See Resp. SMF ¶ 22. Thus, Defendant has failed to meet its initial burden that it "maintained its premises in a reasonable condition." See Reinemann, 656 N.Y.S.2d at 546.

In addition, Plaintiff has provided evidence that Defendant may have created the dangerous condition either by: (1) dumping mop waste water onto the handicap ramp or sidewalk that later froze; or (2) failing to repair a pre-existing hole in the roof overhang through which water dripped and froze. See Pl. Mem. at 1-2. Kaarstad and Roberts both personally observed these two sources of ice on the handicap ramp, and Kaarstad received complaints from customers who witnessed the presence of ice. Resp. FSF ¶¶ 4-7. Plaintiff's photographs of the hole in the roof overhang also support their testimonies. See Dkt. No 21-4, Ex. 1-3 ("Photos"). Collectively, Plaintiff has provided sufficient evidence to support his claim that Defendant created the dangerous condition. See Olsen, 2005 WL 2989546, at *11-12 (denying summary judgment because circumstantial evidence made it "quite possible that a reasonable jury could infer that the hazard was created by [defendant's] employee"); see also Migli v. Davenport, 672 N.Y.S.2d 551, 552 (App. Div. 1998) (finding that defendant had notice of ice formation in the parking lot caused by the absence of a gutter that led to rain and melting snow falling off the roof). Accordingly, the Court finds that Defendant has failed to meet its burden in establishing that it did not create the dangerous condition.

**B. Actual or Constructive notice**

"For a plaintiff to successfully assert that a defendant had constructive notice of a dangerous condition, the 'defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" Richards, 2008 WL 3165582, at *6 (quoting Wesolek v. Jumping Cow Enter., 857 N.Y.S.2d. 859, 861 (App. Div. 2008)). "A general awareness that some dangerous condition may be present is insufficient to constitute constructive notice." Tedesco v. Norfolk S. Corp., No. 00-CV-0172E, 2002 WL 1628874, at *4 (W.D.N.Y. June 6, 2002) (citing Piacquadio v. Recine Realty Corp., 646 N.E. 795,

796 (N.Y. 1994)). Alternatively, "[a] plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed. Mazerbo v. Murphy, 860 N.Y.S.2d 289, 291 (App. Div. 2008) (citation omitted).

Defendant argues that there is no genuine issue of material fact with regards to actual or constructive notice because: (1) the black ice was not "visible and apparent"; (2) Defendant had not received any prior complaints of icy conditions on or around the handicap ramp; and (3) Altschule's analysis fails to establish whether, and for how long, ice was present at the site of Plaintiff's fall. Mot. at 6-10.

*1. Whether the Black Ice Was "Visible and Apparent"*

Plaintiff describes "black ice" as "where it looks like it's not ice, it looks like it's just wet." Resp. SMF ¶ 5. Moreover, Plaintiff concedes that he did not see ice on the handicap ramp before he slipped and fell. Id. Indeed, it appears that the very defining feature of "black ice" is that it is inherently not "visible and apparent." Such characterization, together with Plaintiff's admission, lend support to Defendant's argument that it lacked actual or constructive notice. See Gordon v. Am. Museum of Natural History, 492 N.E. 774, 775 (N.Y. 1986) (finding the defendant lacked constructive notice where the black ice was not visible and apparent); see also Smith v. Smith, 735 N.Y.S.2d 630, 632 (App. Div. 2001) (noting that plaintiff's failure to see black ice until after fall supported finding that defendant lacked constructive notice); Phillips v. Henry B'S, Inc., 925 N.Y.S.2d. 770 (App. Div. 2011); Mullaney v. Royalty Props. LLC, 916 N.Y.S. 2d. 545 (App. Div. 2011).

However, while Plaintiff did not personally observe the black ice until after he fell, Defendant has the burden of proving that there is no triable issue of fact. See Celotex, 477 U.S. at

10

323. Leduc testified that the store's employees are "watching [outside] all the time." Resp. SMF ¶ 21; Leduc. Dep. at 34. Further, the Incident Report indicates that there was an "ice storm" that day. Incid. Rep. Altschule's analysis also concluded that there had been a mix of snow and sleet earlier in the day. Resp. SMF ¶¶ 32-34. Moreover, because less than three inches of snow fell on the day of Plaintiff's fall, Defendant's outside vendor did not attend to the property. Id.; Leduc Dep. at 10. Furthermore, Leduc testified that Defendant does not document its own snow removal procedures. Leduc Dep. at 40-41. Therefore, Defendant has provided no evidence that they performed any snow or ice removal that day, despite evidence of precipitation and its own acknowledgment of the "ice storm." See Leduc Dep. at 10; Incid. Rep.; see also Wright v. Emigrant Sav. Bank, 976 N.Y.S.2d 47 (App. Div. 2013) ("[The defendant] has not established prima facie that it did not . . . have notice of the black ice that allegedly caused plaintiff to slip and fall, as it failed to submit any evidence concerning its snow/ice removal and inspections efforts taken on the day of the accident with respect to the area where plaintiff fell."); Spector v. Cushman & Wakefield, Inc., 928 N.Y.S.2d 9, 10 (App. Div. 2011) ("[Defendant] failed to meet its burden with respect to actual or constructive notice of the ice because it proffered no affidavit or testimony based on personal knowledge as to when its employees last inspected the sidewalk or the sidewalk's condition before the accident.").

In sum, although Plaintiff did not observe the black ice before his fall, the key issue is whether *Defendant* had notice of the dangerous condition. Defendant had ample opportunity to discover the ice on the handicap ramp and has provided no proof that it took any steps to inspect or remedy the dangerous condition. Therefore, Defendant has failed to meet its burden that there is no genuine issue of material fact as to whether the ice was "visible and apparent." See Gonzalez, 836

N.Y.S.2d. at 614 (noting the location of the icy condition as in "close proximity to the store's front door," combined with "defendant's failure to perform any meaningful maintenance" could lead to a reasonable inference of constructive notice); see also Rogers v. Niagara Falls Bridge Comm'n, 914 N.Y.S.2d 539, 540 (App. Div. 2010) (noting that plaintiff raised a triable issue of fact with regard to notice and opportunity to remedy the dangerous condition when an employee of defendant testified "that there were no procedures for regularly inspecting the premises and that he knew of no inspection that took place on the day of the accident.").

### 2. Prior Complaints

As stated *supra*, notice can also be found where there is an "ongoing and recurring unsafe condition which regularly went unaddressed." Mazerbo, 860 N.Y.S.2d at 291. "[A] plaintiff is not required to prove that the defendant[ ] knew or should have known of the existence of a particular defect where [the defendant] had actual notice of a recurrent dangerous condition in that location." Hale v. Wilmorite, Inc., 827 N.Y.S.2d 387 (App. Div. 2006).

Leduc asserts that he had not received any complaints regarding icy conditions on the handicap ramp prior to Plaintiff's fall. Resp. SMF ¶ 22. However, Kaarstad and Roberts both testified that they personally observed ice form on or around the handicap ramp after employees dumped mop bucket waste water in the area. Resp. FSF ¶¶ 5, 7. In addition, Kaarstad claims that she received numerous complaints from customers about the same condition. Pl. Mem. at 2. She also states that she personally observed water leaking from a hole in the overhang that formed into ice on the handicap ramp. Resp. FSF ¶ 6. Additionally, Plaintiff has provided photographic

12

evidence of the overhang's condition.[4] Dkt. No. 21-4, Ex. 1-3 ("Photos").

In sum, Defendant has failed to meet its burden that there is no genuine dispute as to whether it had received complaints directly from customers or that it lacked notice of an "ongoing and recurring unsafe condition." See Migli, 672 N.Y.S.2d at 552 (finding that defendant had constructive notice of a recurrent dangerous condition caused by the absence of a gutter that led to rain and melting snow falling off the roof and forming ice in the parking lot during the winter months); see also Mondello v. DiStefano, 792 N.Y.S.2d 177, 178 (App. Div. 2005) (noting that plaintiff's evidence, including photographs depicting the outfall from a defective gutter, "raised triable issues of fact as to whether [the defendant] had actual knowledge of a recurrent dangerous condition and therefore could be charged with constructive notice").

### 3. Alschute's Analysis

Defendant argues that Alschute's analysis does not show that it had actual or constructive notice of the alleged icy condition because Altschule: (1) "did not know whether there was snow or

---

[4] Defendant argues that the photographs are inadmissible, and therefore should not be considered by the Court, because they have not been properly authenticated. Reply ¶ 4. Defendant asserts that the photographs "do not accurately depict the placement and condition of the ramp as it existed at the time of [P]laintiff's alleged accident on December 13, 2009." Id. "As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 175–76 (5th Cir. 1990)). "Photographs are authenticated by testimony of a person familiar with the object portrayed therein." Cochrane v. McGinnis, 50 F. App'x 478, 480 (2d Cir. 2002) (citation omitted). Here, Kaarstad, who was Defendant's employee for approximately two years, including the date of Plaintiff's injury, has provided affidavit testimony that the photographs "are fair and accurate representations of the conditions of the store." Kaarstad Dep. ¶ 5. While Plaintiff has failed to establish that these photographs fairly and accurately represent the condition of the ramp area *on the actual date* of Plaintiff's alleged fall, the Court may still consider them as relevant, and Defendant may renew its objection if Plaintiff is unable to properly authenticate them at trial. See Rivera v. Inc. Village of Farmingdale, No. 06-CV-2613, 2013 WL 6888385, at *7 (E.D.N.Y. Dec. 31, 2013).

ice in the area of the sidewalk or handicapped ramp where [P]laintiff fell"; (2) testified that "while black ice *can* form if the ground temperature is below thirty-two degrees, his analysis *did not* include ground temperature"; and (3) "could not state to a reasonable degree of meteorological certainty how long it would take precipitation that ended at 6:45 P.M. to freeze into black ice." Mot. at 9-10 (emphasis in original).

Plaintiff correctly points out that Defendant's arguments are misguided, as they go to the weight of the evidence, rather than to its admissibility.[5] Resp. SMF ¶¶ 28-29, 36-37. The Court's role in deciding a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo, 22 F.3d at 1224.

Plaintiff does not offer Altschule's testimony as direct evidence of the presence and duration of ice on the handicap ramp. See Resp. SMF ¶¶ 26-37. Rather, Altschule's analysis is provided as circumstantial evidence to suggest that ice *could* have formed prior to Plaintiff's fall. See id. Although his analysis is not definitive on the issue, when combined with Plaintiff's additional evidence discussed *supra*, a trier of fact may reasonably infer that Defendant had notice of the dangerous condition. See Feder, 2014 WL 1651955 at *2 ("Though a plaintiff cannot avoid summary judgment on this issue through mere speculation and conjecture, circumstantial evidence may be sufficient if it supports an inference of causation or negligence."). Resolving all inferences in favor of the nonmoving party, as the Court must in a motion for summary judgment, see Reeves, 530 U.S. at 150, the Court finds that Defendant has failed to meet its burden in establishing a lack of

---

[5] The Court notes that Defendant has not directly challenged the admissibility of Altschule's testimony. See Mot. at 9-10.

14

genuine issue of material fact with regard to Altschule's analysis.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 19) for summary judgment is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: June 19, 2014
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge